UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division
**Case Number: 15-23032-CIV-MARTINEZ-GOODMAN**

TRACFONE WIRELESS, INC.

      Plaintiff,

vs.

JUAN HERNANDEZ,

      Defendant.

_____/

## ORDER GRANTING MOTION FOR ENTRY OF DEFAULT FINAL JUDGMENT AND PERMANENT INJUNCTION

THIS MATTER came before the Court upon Plaintiff TracFone Wireless, Inc.'s ("TracFone") Motion for Entry of an Order Entering Default Final Judgment and a Permanent Injunction (the "Motion") (D.E. 22) pursuant to Fed. R. Civ. P. 55(b) and 65 against Defendant Juan Hernandez ("Hernandez"), filed on February 23, 2016.

### INTRODUCTION

In its Motion, TracFone seeks entry of final default monetary judgment in the amount of $35,275.00, plus prejudgment interest in the amount of $4,266.72 for a total net monetary judgment of **$39,541.72**. TracFone also seeks entry of a permanent injunction prohibiting Hernandez from engaging in the type of conduct that prompted TracFone to file this action. Finally, TracFone asks that the Court order Hernandez to provide certain post-judgment discovery, as provided for by the applicable rules of procedure.

Although Hernandez did not appear in this action to challenge TracFone's allegations, a "defendant, by his default, admits the plaintiff's well-pleaded allegations of fact" as set forth in the operative complaint. *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009); *see also Tiramisu Int'l LLC v. Clever Imports LLC*, 741 F. Supp. 2d 1279, 1285 (S.D. Fla. 2010). As additional support to buttress the foundation of facts that Hernandez

has admitted as true by virtue of his default, TracFone relies significantly upon the Declaration of Kevin Wehling, the Fraud Investigations Manager for TracFone (the "Wehling Declaration" or "Wehling Dec."). (D.E. 22-1.)

Having reviewed the Complaint (D.E. 1) and the Wehling Declaration (D.E. 22-1), as well as the Motion (D.E. 22), the Court finds that the facts set forth therein are credible. Coupled with the fact that Hernandez's default admitted the well-pleaded allegations of fact made by TracFone in the Complaint, the Court, as set forth in more detail below, makes several findings of fact based upon the default and the Wehling Declaration.

### SERVICE OF PROCESS

On August 13, 2015, TracFone filed this lawsuit against Hernandez. (D.E. 1.) TracFone filed a Motion for Order Authorizing Service of Process Pursuant to Fed. R. Civ. P. 4(f) seeking permission to serve Hernandez via international mail and via email. (D.E. 7.) The Court entered an Order authorizing service of process via international mail and email on September 2, 2015. (D.E. 10.) TracFone delivered the Summons and Complaint to the Clerk's Office on September 9, 2015, at which point it was dispatched to Hernandez via international mail. (D.E. 11.) In addition, TracFone served Hernandez with the Summons and Complaint via email on September 8, 2015, in accordance with Fed. R. Civ. P. 4(f). (D.E. 13-1.) Pursuant to Fed. R. Civ. P. 12(a)(1)(A), Hernandez was required to respond to TracFone's Complaint on or before September 29, 2015. Hernandez failed to respond to the Complaint by September 29, 2015, and TracFone moved for entry of Clerk's default on October 6, 2015. (D.E. 14.)

Due to the nature of the foreign service pursuant to Fed. R. Civ. P. 4(f) and the Court's specific Order authorizing this (D.E. 10), TracFone filed a Motion for Clarification Regarding Motion for Entry of Clerk's Default Against Defendant and for Order Directing Clerk to Enter Default. (D.E. 16.) This Court entered an Order Directing the Clerk to Enter a Clerk's Default on January 27, 2016. (D.E. 17.) In so doing, the Court found that service upon Hernandez was proper. The Clerk entered a Clerk's Default against Hernandez on January 27, 2016. (D.E. 18.)

This Court is mindful that since it issued is decision authorizing service by FedEx pursuant to Article 10(a) of the Hague Convention, one district court of this circuit issued an opinion disagreeing with this Court's analysis and conclusion. *See Merial Inc. v. Ceva Sante Animale, S.A.*, 2016 WL 320141, at *3 (M.D. Ga. Jan. 26, 2016) (finding that service by mail is not permitted under Article 10(a), even where destination state does not object but noting that "*several* district courts from this circuit have also found that Article 10(a) allows service by mail." (emphasis added)).

Nonetheless, the position advocated by the court in *Merial Inc.* continues to be a clear minority position: At least seven other federal district court opinions have sided with this Court's position just in the few months since the decision was issued. *See Leon v. Cont'l AG*, ---F. Supp. 3d----, 2016 WL 1388950, at *2 (S.D. Fla. Apr. 1, 2016) (King, J.) (noting that "the contrary authority is at odds with the *official* position of the United States as set forth by the Department of State."); *Super 8 Worldwide, Inc. v. 3082649 Nova Scotia, Ltd.*, 2016 WL 1118497, at *3 (D.N.J. Mar. 22, 2016) (acknowledging circuit split and deciding to "follow that majority view and find acceptable service of process through postal channels under the Hague Service Convention and Rule 4(f)(1)."); *Zobel v. Contech Enterprises*, 2016 WL 1117592, at *6 (S.D. Ohio Mar. 21, 2016) (acknowledging circuit split and adopting the majority view that Article 10(a) includes service of process, especially because "The Hague Convention's own practical handbook—authored by members elected by the signatory countries—explicitly states that Article 10(a) includes service of process." (citing *Practical Handbook on the Operation of the Hague Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters*)); *Amirault v. Ferrari*, 2015 WL 6870119, at *3 (N.D. Ohio Nov. 6, 2015); *Lewis v. Madej*, 2015 WL 6442255, at *11, n.4 (S.D.N.Y. Oct. 23, 2015); *SHLD, LLC v. Hall*, 2016 WL 659109, at *3 (S.D.N.Y. Feb. 17, 2016); *Altos Hornos de Mexico, S.A.B. de C.V. v. Rock Res. Ltd.*, 2015 WL 6437384, at *2 (S.D.N.Y. Oct. 19, 2015).

Additionally, the Fourth Circuit recently strongly suggested it was of the same view as this Court. *See U.S. ex rel. Walterspiel v. Bayer AG*, ---F.App'x----, 2016 WL 233709, at *2 (4th Cir. Jan. 20, 2016) (noting that "Article 10(a) of the Hague Service Convention states that the 'Convention shall not interfere with . . . the freedom to send judicial documents, by postal channels, directly to persons abroad,'" and then holding that service was not permissible on a party served by postal channel in Germany because Germany specifically objected to such service and "the Article permits a 'State of destination' to object to the delivery of judicial documents by postal channels.").

Likewise, the Second District Court of Appeal in Florida reached the same conclusion as this Court in *Portalp Int'l SAS v. Zuloaga*, ---So. 3d----, 2015 WL 9258496, at *1–4 (Fla. 2d DCA Dec. 18, 2015). There, the court was deciding whether service was proper under Fla. Stat. § 48.194(1), which provides, in part, that "[s]ervice of process on persons outside the United States may be required to conform to the provisions of the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters." *Id.* In *Portalp Int'l SAS*, the court held, on the same basis as this Court, that "[i]t is apparent that interpreting article 10(a) to permits service of process by mail is consistent with the intent and expectations of the signatories" to the Hague Service Convention. *Id.*

This Court continues to be of the position that Article 10(a) of the Hague Service Convention allows for service abroad by postal channel, provided that the destination country does not object to such service. The nine reported opinions supporting this view issued since the Court's Order of September 2, 2015 (D.E. 10), confirm the validity of adopting this majority view.[1]

---

[1] The Court also notes that TracFone served Hernandez via email, pursuant to the Court's Order (D.E. 10) directing such service pursuant to Fed. R. Civ. P. 4(f)(3), so even if the Court were to reconsider its position on Article 10(a), service was still carried out appropriately in this case.

Also, because TracFone is seeking a default judgment against an individual, it must demonstrate compliance with the Servicemembers Civil Relief Act ("SCRA"), 50 U.S.C. App'x § 501 et seq. *See Nautilus Ins. Co. v. Feliz*, 2011 WL 3897968, at *3 (M.D. Fla. Aug. 3, 2011) *report and recommendation adopted*, 2011 WL 3897861 (M.D. Fla. Sept. 6, 2011) (citing 50 U.S.C. App'x § 521(b)(1)). This "requires, *inter alia*, the filing of an affidavit by the plaintiff:

    (A)    stating whether or not the defendant is in military service and showing necessary facts to support the affidavit; or

    (B)    if the plaintiff is unable to determine whether or not the defendant is in military service, stating that the plaintiff is unable to determine whether or not the defendant is in military service."

Accordingly, as required by the SCRA in support of its Motion, TracFone filed a Non-Military Affidavit to show that Hernandez was not in the service of the armed forces of the United States or our allies during this time period. (D.E. 21-1.). The Court finds that TracFone has indeed complied with the SCRA through facts set out in its Non-Military Affidavit.

## FINDINGS OF FACT

The Court finds that TracFone has established that TracFone is the largest provider of prepaid wireless telephone service ("TracFone Service") in the United States, and markets its service under the Clearway Wireless, Net10, Page Plus, SafeLink Wireless, Simple Mobile, Straight Talk, TelCel America, Total Wireless, and TracFone brands, many of which bear TracFone's trademarked spiracle logo (the "TracFone Brands"). D.E. 1 ¶ 19; Wehling Dec. ¶ 3. Next, the Court finds that TracFone owns valid and enforceable trademark rights in the trademarks identified in the Complaint (the "Marks"). D.E. 1 ¶ 21; Wehling Dec. ¶ 4. The Court further finds that that TracFone has established that its TracFone Service is activated through the use of unique codes, known as personal identification numbers ("PINs"), found on the back of TracFone Service cards or computer-generated when purchasing TracFone Service over the phone or from any of the TracFone Brands through the web ("Airtime Service PINs"). D.E. 1 ¶ 14; Wehling Dec. ¶ 7.

In addition, the Court finds that that TracFone has established that its customers load TracFone Service into their TracFone Brand prepaid devices using codes and proprietary tools that validate the Airtime Service PINs associated with the TracFone Service before loading it onto the TracFone Brand device, online, through TracFone's IVR (interactive voice response) system, or through a TracFone customer service representative who assists in validating and loading the TracFone Service to the TracFone Brand device. (D.E. 1 ¶ 19.)

The Court finds that TracFone has established that Hernandez perpetrated an unlawful scheme to fraudulently and unlawfully obtain Airtime Service PINs and activate unlawfully obtained service on the devices of otherwise-legitimate TracFone customers. D.E. 1 ¶ 15; Wehling Dec. ¶ 8. In addition, the Court finds that TracFone has established Hernandez perpetrated his scheme by illegally obtaining Airtime Service PINs and then fraudulently advertising and reselling them online to unsuspecting and otherwise-legitimate TracFone customers, thereby directly converting what would have been TracFone's revenue into Hernandez's illicit profits. D.E. 1 ¶ 15; Wehling Dec. ¶ 10.[2]

The Court additionally finds that TracFone has established that, as part of the Airtime Theft Scheme, Hernandez would fraudulently advertise illegally obtained TracFone cards, prepaid minutes, and codes for sale through websites like eBay and Facebook. D.E. 1 ¶ 8; Wehling Dec. ¶ 11. The Court finds that TracFone has established that one such technique that Hernandez would use to perpetrate the Airtime Theft Scheme was to steal Airtime Service PINs through a technique that is sometimes referred to as "brute-forcing," which is the practice of attempting codes until a person gets one, or a series, of codes that work and then duplicating those sequences. D.E. 1 ¶ 15; Wehling Dec. ¶ 12. Further, the Court finds that TracFone has established that Hernandez was able to identify unredeemed and uncirculated Airtime Service PINs that activated Airtime Service, and, once he unlawfully located such Airtime Service PINs,

---

[2] Hernandez's scheme is referred to herein as the "Airtime Theft Scheme."

Hernandez repeated similar sequences of numbers to perpetrate his Airtime Service Scheme. D.E. 1 ¶ 15; Wehling Dec. ¶ 12.  The Court finds that TracFone has established  that  another method that Hernandez used to perpetrate the Airtime Theft Scheme was to induce TracFone employees to issue unpaid-for TracFone Service to otherwise-legitimate TracFone customers. D.E. 1 ¶ 16; Wehling Dec. ¶ 13.

In addition, the Court finds that TracFone has established in that early 2014, as part of its investigation of the Airtime Theft Scheme, TracFone identified an eBay seller with the moniker "allpins2014" offering to sell TracFone Service marketed under the Net10, Straight Talk, and TracFone brands.   D.E. 1 ¶ 26; Wehling Dec.  ¶ 14.   The Court finds that TracFone has established that it engaged an investigator to purchase 1,500 minutes of TracFone Service on eBay through allpins2014.  D.E. 1 ¶ 28; Wehling Dec. ¶ 14.   The Court further finds that that TracFone has established that its investigator paid $210.40 for the minutes via PayPal, which returned a receipt for Juan Hernandez (email: allamerican0925@gmail.com).   D.E. 1 ¶ 28; Wehling Dec. ¶ 14.  The Court next finds that TracFone has established that this confirmed an earlier purchase made through the same method.  *See* Exhibit B to Wehling Dec.; Wehling Dec. ¶ 14.  Furthermore, the Court finds that TracFone has established that when its investigator contacted Hernandez to confirm the purchase, Hernandez indicated that he would not mail an actual TracFone Service card to the investigator but instead would add the TracFone Service to the investigator's phone number himself.  D.E. 1 ¶ 29; Wehling Dec. ¶ 14.

Next, the Court finds that TracFone has established that its further investigations identified multiple postings of TracFone cards, prepaid minutes, and codes listed under the eBay seller "allpins2014."  D.E. 1 ¶ 27; Wehling Dec. ¶ 15.  The Court finds that TracFone has established that, in addition, upon review of the TracFone Service that Hernandez sold to the investigator, at least some of the TracFone Service that Hernandez is selling was never placed into commerce. D.E. 1 ¶ 33; Wehling Dec. ¶ 16.

Additionally, and of significant importance, the Court finds that TracFone has established that multiple customers of Hernandez's illicit TracFone Service contacted TracFone with complaints about their TracFone Service. Wehling Dec. ¶ 17. The Court finds that TracFone has established that it was able to identify Hernandez as the source of these Airtime Service PINs. Wehling Dec. ¶ 17. The Court further finds that TracFone has demonstrated that these customers also provided proof of purchase from Hernandez. *See* Exhibits C, D, and E, to Wehling Dec.; Wehling Dec. ¶ 17.

Finally, the Court finds that by virtue of his default, Hernandez has admitted all of the allegations listed above as set forth in the Complaint. *See Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009). Accordingly, the Court ultimately concludes that TracFone is entitled to damages in the amount of $35,275.00, along with prejudgment interest in the amount of $4,266.72, for a total judgment in the amount of $39,541.72. Lastly, the Court finds that it is reasonable to assume that Hernandez will continue to cause harm to TracFone unless his conduct is permanently enjoined as to all of the TracFone Brands and that TracFone is entitled to entry of a permanent injunction against Hernandez.

## CONCLUSIONS OF LAW

### STANDARD OF REVIEW

Federal Rule of Civil Procedure 55(b)(2) provides for the entry of default judgment by the court upon a party's motion. A "defendant, by his default, admits the plaintiff's well-pleaded allegations of fact" as set forth in the operative complaint. *Eagle Hosp. Physicians*, 561 F.3d at 1307; *see also Tiramisu Int'l LLC v. Clever Imports LLC*, 741 F. Supp. 2d 1279, 1285 (S.D. Fla. 2010). "With regard to the measure of damages, the allegations contained in the complaint are not considered admissions by virtue of the default; [rather], the Court determines the amount and character of damages to be awarded." *TracFone Wireless, Inc. v. Anadisk, LLC*, 685 F. Supp. 2d 1304, 1310 (S.D. Fla. 2010). Accordingly, TracFone can establish the amount of damages by submitting sufficient evidence to support the request for damages. *Id.*

A default judgment awarding damages may be entered without a hearing where "the amount claimed is a liquidated sum or one capable of mathematical calculation." *Adolph Coors Co. v. Movement Against Racism and the Klan*, 777 F.2d 1538, 1543–44 (11th Cir. 1986) (quoting *United Artists Corp. v. Freeman*, 605 F.2d 854 (5th Cir. 1979) (per curiam)).   An evidentiary hearing is "unnecessary" where a defendant cannot adequately controvert the evidence submitted by the plaintiffs. *Tara Productions, Inc. v. Hollywood Gadgets, Inc.*, 449 F.App'x. 908, 911 (11th Cir. 2011) (per curiam).   The Eleventh Circuit reviews a district court's determination of damages pursuant to a default judgment without the benefit of an evidentiary hearing for abuse of discretion. *See SEC v. Smyth*, 420 F.3d 1225, 1230 (11th Cir. 2005).

In addition, pursuant to Fed. R. Civ. P. 58(a), except for the exclusive list of orders disposing of certain motions, "[e]very judgment and amended judgment must be set out in a separate document."   Furthermore, Rule 58(d) provides that "[a] party may request that judgment be set out in a separate document as required by Rule 58(a)."

### JURISDICTION AND VENUE

This Court has subject-matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1338, and 1367 because TracFone's claims for violations of the United States Trademark Act, Title 15 of the United States Code, and the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq.*, arise under federal law.   Additionally, this Court has supplemental jurisdiction over TracFone's state law claims because those claims are so related to the federal claims that they form part of the same case or controversy pursuant to 28 U.S.C. § 1367.

This Court has jurisdiction over Hernandez because he has carried on a business venture in Florida, committed a tortious act within Florida, caused injury to a business in Florida, breached a contract in Florida, and engaged in substantial and not isolated activity in Florida, bringing his actions within Florida's long-arm statute, as codified at Fla. Stat. § 48.193.

Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(a) and (b) because a substantial part of the events or omissions giving rise to the claim occurred in this district and the impact of Defendant's misconduct occurred in this district.

### LIABILITY

TracFone asserted a claim that Hernandez engaged in conversion by turning unpaid-for TracFone Service in to his own illicit profits. (D.E. 1 ¶¶ 43–47.) "Under Florida law, the elements of conversion are '(1) an act of dominion wrongfully asserted; (2) over another's property; and (3) inconsistent with his ownership therein.'" *Joe Hand Promotions, Inc. v. Creative Enter., LLC*, 978 F. Supp. 2d 1236, 1241 (M.D. Fla. 2013) (quoting *Joe Hand Promotions, Inc. v. Hart*, 2012 WL 1289731, *2–3 (S.D. Fla. Apr. 16, 2012)). The Court finds no doubt that TracFone has effectively established its conversion claim. The Court concludes that TracFone has the right to provide its telecommunications products and services to the public; Hernandez does not. (D.E. 1 ¶ 44.) In addition, the Court finds that Hernandez knew or should have known that TracFone is the owner of the Marks and the prepaid airtime minutes, and that Hernandez has no legal right to use the Marks or to steal the prepaid airtime minutes. (D.E. 1 ¶ 45.) Therefore, the Court reasons that Hernandez wrongfully asserted dominion over the TracFone Airtime Service PINs, which are the clear property of TracFone, and turned these Airtime Service PINs into his own profits. (D.E. 1 ¶¶ 46.) Accordingly, the Court finds that TracFone has satisfied each element of Count I of the Complaint.

Second, TracFone brought a claim for federal trademark infringement under the Lanham Act, 15 U.S.C. § 1114 and 15 U.S.C. § 1125(a)(1)(A)–(B), which prohibit the "use in commerce of any designation likely to cause confusion (1) as to the user's 'affiliation, connection or association' with another person or (2) as to 'the origin, sponsorship, or approval of [the user's] goods, services, or commercial activities by another person.'" *J. Christopher's Rests., LLC v. Kranich*, 2010 WL 4007666, at *4 (M.D. Fla. Oct. 13, 2010). To prevail on a cause of action for trademark

infringement, "Plaintiff must demonstrate that (1) it had prior rights to the mark at issue; and (2) Defendants adopted a mark or name that was the same, or confusingly similar to Plaintiff's trademark, such that consumers were likely to confuse the two." *Under Armour, Inc. v. 51nfljersey.com*, 2014 WL 1652044, at *4 (S.D. Fla. Apr. 23, 2014) (citing *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 (11th Cir. 2001)).

The Court finds that TracFone has established its prior ownership rights to the Marks at issue originate in valid and protectable trademarks that are registered with the United States Patent and Trademark Office. (D.E. 1 ¶¶ 21–24.) Further, the Court finds that TracFone has established that because the TracFone Brands are all one larger family, harm to the goodwill of one TracFone Brand means harm to all of the TracFone Brands operating under the spiracle logo. D.E. 1 ¶ 54; *see generally Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC*, 2009 WL 6812111, at *5 (S.D. Fla. 2009) (examining "family of trademarks"); *see generally also Mango's Tropical Café, Inc. v. Mango Martini Restaurant & Lounge, Inc.*, 844 F. Supp. 2d 1246 (S.D. Fla. 2011) (same); *HBP, Inc. v. American Marine Holdings, Inc.*, 290 F. Supp. 2d 1320, 1328 (M.D. Fla. 2003); *Bell Laboraties, Inc. v. Colonial Prods., Inc.*, 644 F. Supp. 542, 546 (S.D. Fla. 1986).

Moreover, the Court finds that TracFone has properly alleged that Hernandez's "use of at least one of TracFone's Marks in connection with his Airtime Theft Scheme has caused, and will further cause, a likelihood of confusion, mistake, and deception as to the source of origin of [Hernandez]'s products and services, and the relationship between TracFone and Hernandez." (D.E. 1 ¶ 51.)

In considering the likelihood of confusion factors, the Court concludes that TracFone has adequately alleged that Hernandez intentionally perpetrated his Airtime Theft Scheme by utilizing marks identical to TracFone's protected Marks; that the identical marks are used to advertise and sell Devices that are functionally identical to those sold by TracFone; that those products and

services are advertised through similar channels; and that actual confusion has occurred.  (D.E. 1 ¶¶ 38–42, 49–56.)  In addition, the Court finds it very persuasive that TracFone received multiple complaints from customers that were able to produce proofs of purchase sourcing their TracFone Service to Hernandez's Airtime Theft Scheme.  Wehling Dec. ¶ 17.  The Court finds little doubt that these complaints serve as evidence of actual confusion, which weighs greatly in favor of a likelihood of confusion.  *See Frehling Enters., Inc. v. Int'l Select Group, Inc.*, 192 F.3d 1330, 1340–41 (11th Cir. 1999) ("It is undisputed that evidence of actual confusion is the best evidence of a likelihood of confusion.") (citing *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 978 (11th Cir. 1983)).  As such, the Court concludes that TracFone has sustained a claim for trademark infringement in Count II.

Next, in Count III of the Complaint, TracFone claimed that Hernandez committed unfair competition in violation of 15 U.S.C. § 1125(a)(1)(A) and (B).  To prevail on a claim for federal unfair competition, a "plaintiff must show (1) that the plaintiff had enforceable trademark rights in the mark or name, and (2) that the defendant made unauthorized use of it such that consumers were likely to confuse the two."  *Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 647 (11th Cir. 2007) (internal quotations omitted).  The Court finds that TracFone had enforceable rights in the Marks used by Hernandez.  Wehling Dec. ¶¶ 4–5.  The Court further finds that TracFone owns all right, title, and interest in and to the Marks.  Wehling Dec. ¶¶ 4–5.  The Court concludes that TracFone Marks are valid, distinctive, protectable, famous, have acquired secondary meaning, and are associated exclusively with TracFone.  In addition, the Court finds that Hernandez has never been authorized to use the TracFone Marks, and he used them in such a way so as to engender confusion amongst consumers.  Wehling Dec. ¶ 17.  Hence, the Court finds that TracFone's allegations are sufficient to support a claim for federal unfair competition in Count III.

To establish Count IV for violation of Section 1030(a)(4) of the Computer Fraud and Abuse Act ("CFAA"), TracFone must demonstrate the following elements: "(1) [Defendant] accessed a protected computer; (2) [Defendant] accessed [TracFone]'s computer without authorization or by exceeding authorized access; (3) [Defendant] did so knowingly and with intent to defraud; and (4) [Defendant]'s access furthered the intended fraud and obtained anything of value." *NCMIC Fin. Corp. v. Artino*, 638 F. Supp. 2d 1042, 1061–62 (S.D. Iowa 2009). The Court finds that TracFone has established the required elements under section 1030(a)(4) of the CFAA. First, the Court finds that TracFone's proprietary internal systems are protected computers under the CFAA. (D.E. 1 ¶ 75.) The statute defines a protected computer as a computer, "which is used in or affecting interstate or foreign commerce or communication. . . ." 18 U.S.C. § 1030(e)(2)(B). Next, the Court finds that TracFone's computers are used in interstate commerce because they comprise a system by which airtime, which is typically pre-purchased by TracFone customers, can be added to any customer's telephone number through the internet. (D.E. 1 ¶ 77.) Furthermore, the Court finds that Hernandez was not authorized to access TracFone's systems and did so with the intent to defraud TracFone. D.E. 1 ¶ 74; Wehling Dec. ¶ 13. Finally, the Court finds that TracFone has established that it suffered "damages" or "losses" in excess of $5,000 in a one-year period. (D.E. 1 ¶¶ 78–80.) Accordingly, TracFone has established each of the requisite elements of Count IV.

To establish civil liability under Section 1030(a)(5)(C) of the CFAA, TracFone must demonstrate that Hernandez accessed a protected computer without authorization or exceeded his authorized access, "causing 'loss to 1 or more persons during any 1–year period . . . aggregating at least $5,000 in value.'" *Trademotion, LLC v. Marketcliq, Inc.*, 857 F. Supp. 2d 1285, 1290 (M.D. Fla. 2012) (quoting 18 U.S.C. 1030(c)(4)(A)(i)(I)). Like the other relevant provisions of the CFAA, section 1030(a)(5)(C) requires knowing or intentional access to a protected computer without authorization. *See* 18 U.S.C. § 1030(a)(4); 18 U.S.C.

§ 1030(a)(2)(C); 18 U.S.C. § 1030(a)(5)(C).  The Court concludes that Hernandez was not authorized to access TracFone's systems and did so with the intent to defraud TracFone. D.E. 1 ¶ 91; Wehling Dec. ¶ 13.  Next, the Court finds that TracFone's proprietary internal systems are protected computers under the CFAA.  (D.E. 1 ¶ 92.)  Additionally, TracFone has established that it suffered "damages" or "losses" in excess of $5,000 in a one-year period. (D.E. 1 ¶¶ 78–80.)  Hence, TracFone has established sufficient facts to sustain Count V.

Finally, TracFone alleges an unjust enrichment claim against Hernandez in Count VI of the Complaint.  (D.E. 1 ¶¶ 101–104.)  "The elements of a cause of action for unjust enrichment are: (1) plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) defendant voluntarily accepts and retains the benefit conferred; (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff."  *Hillman Const. Corp. v. Wainer*, 636 So. 2d 576, 577 (Fla. 4th DCA 1994).  The Court finds that when perpetrating the Airtime Theft Scheme, Hernandez accepted TracFone Service that he knew was unlawfully obtained and unpaid-for in order to resell the TracFone Service for his own profits.  (D.E. 1 ¶¶ 101–104.)  Accordingly, the Court finds that it would be inequitable for Hernandez to retain this benefit from TracFone, and TracFone has adequately alleged an unjust enrichment claim.  (D.E. 1 ¶ 104.)

For these reasons, the Court finds that judgment should be entered in favor of TracFone and against Hernandez as to all six counts of TracFone's complaint.

### INJUNCTIVE RELIEF

TracFone seeks entry of a permanent injunction against Hernandez.  To demonstrate entitlement to permanent injunctive relief, the moving party must demonstrate: (1) success on the merits of its claims; (2) an irreparable injury in which monetary remedies are inadequate; (3) the balance of hardships between the plaintiff and the defendant favor injunctive relief; and (4) the

public interest would not be disserved by a permanent injunction. *See Angel Flight of Ga., Inc. v. Angel Flight Am., Inc.*, 522 F.3d 1200, 1208 (11th Cir. 2008).

Permanent injunctive relief is appropriate here. First, "the default against Defendant[] satisfies the element of success on the merits." *Sony Music Entm't, Inc. v. Global Arts Prods.*, 45 F. Supp. 2d 1345, 1347 (S.D. Fla. 1999) (finding that the defendants' default satisfied the success on the merits and irreparable harm elements for permanent injunctive relief). Further, irreparable harm is established by Defendants' default. *See id.* (same). Indeed, injunctive relief is appropriate in infringement cases because there is no adequate remedy at law to redress injuries caused by the alleged infringements, which cause irreparable harm. *BMW of N. Am., LLC v. Eurocartechnology, LLC*, 2014 WL 1814291, at *3 (M.D. Fla. Mar. 27, 2014); *Coach, Inc. v. Just A Boun, LLC*, 2011 WL 6318966, at *4 (M.D. Fla. Nov. 8, 2011).

Second, TracFone will presumptively suffer irreparable harm if Hernandez is not required to halt his illegal activities. TracFone will be irreparably harmed because Hernandez's actions, if allowed to persist, will continue to cause TracFone to suffer harm by impairing the integrity of all of the TracFone Brands.[3] Moreover, the grant of permanent injunctive relief is the only adequate remedy to prevent Hernandez from continuing to perpetrate his Airtime Theft Scheme. While damages may suffice to compensate TracFone for Hernandez's past conduct, injunctive relief is necessary to prevent his illegal conduct from occurring on a going forward basis.

Third, the balance of hardships weighs strongly in TracFone's favor. Hernandez has no legitimate interest in perpetrating the Airtime Theft Scheme. Hernandez's livelihood does not rely on defrauding TracFone's customers through willfully infringing TracFone's trademarks and unlawfully acquiring TracFone Service—the focus of TracFone's request for injunctive relief. TracFone, on the other hand, is threatened with irreparable injury if a permanent injunction is not

---

[3] Again, these are: Clearway Wireless, Net10, Page Plus Cellular, SafeLink, Simple Mobile, Straight Talk, TelCel America, Total Wireless, TracFone, and the spiracle logo.

issued.  The continued perpetration of the Airtime Theft Scheme poses a substantial threat to TracFone's business and substantially damages TracFone on a continuous basis.  Under these circumstances, the permanent injunction "will merely enjoin Defendant[] from conducting a business which is already prohibited by state and federal law." *MediaOne of Del., Inc. v. E&A Beeepers & Cellulars*, 43 F. Supp. 2d 1348, 1354 (S.D. Fla. 1998).

Fourth and finally, the public interest is advanced by enforcing faithful compliance with the laws of the United States and the State of Florida.  There is no public interest in the Hernandez's continued perpetration of his Airtime Theft Scheme.  In cases regarding widespread infringement, the public interest factor is significant. *See, e.g., Coach, Inc.*, 2011 WL 6318966, at *4 ("[C]ourts have generally recognized that in [infringement] cases, the public interest is paramount.") (internal quotation marks and citation omitted).  Specifically, "[t]rademark infringement encroaches on the right of the public to be free of confusion as well as the synonymous right of the trademark owner to control his products' reputation." *Id.* (internal quotation marks and citation omitted).  Accordingly, the public interest will be served by issuing the requested injunctive relief.  For the foregoing reasons, the Court enters a permanent injunction against Hernandez as set forth more specifically below.

## MONETARY DAMAGES

A default judgment awarding damages may be entered without a hearing where "the amount claimed is a liquidated sum or one capable of mathematical calculation." *Adolph Coors Co. v. Movement Against Racism and the Klan*, 777 F.2d 1538, 1543–44 (11th Cir. 1986) (quoting *United Artists Corp. v. Freeman*, 605 F.2d 854 (5th Cir. 1979) (per curiam)).  An evidentiary hearing is "unnecessary" where the defendants cannot adequately controvert the evidence submitted by the plaintiffs. *Tara Productions, Inc. v. Hollywood Gadgets, Inc.*, 449 F. App'x. 908, 911 (11th Cir. 2011) (per curiam).  The Eleventh Circuit reviews a district court's

determination of damages pursuant to a default judgment without the benefit of an evidentiary hearing for abuse of discretion. *See SEC v. Smyth*, 420 F.3d 1225, 1230 (11th Cir. 2005).

Here, TracFone elected to receive a money judgment and is seeking only the revenue lost to Hernandez through the Airtime Theft Scheme. *See* Wehling Dec. ¶¶ 20–24. The Court finds that these are very simple calculations and that TracFone has established the values used in the calculations through credible evidence. *See* Wehling Dec. ¶¶ 20–24. Consequently, the Court finds that TracFone has established it is entitled to a money judgment of $35,275.00, plus pre-judgment interest in the amount of $4,266.72, as set forth below.

TracFone is seeking prejudgment interest from Hernandez at the statutory rate based on the revenue lost through the Airtime Theft Scheme. In Florida, "a plaintiff is entitled to prejudgment interest as a matter of law." *SEB S.A. v. Sunbeam Corp.*, 476 F.3d 1317, 1320 (11th Cir. 2007) (citing *Argonaut Ins. Co. v. May Plumbing Co.*, 474 So. 2d 212, 215 (Fla. 1985) ("[S]ince at least before the turn of the century, Florida has adopted the position that prejudgment interest is merely another element of pecuniary damages.")). Florida law provides that prejudgment interest is available for unjust enrichment and tort claims where the amount of a plaintiff's pecuniary loss is clear from the outset.

The Florida Supreme Court confirmed less than four years ago that "it has long been the law in Florida that in contract actions, and in certain tort cases, once the amount of damages is determined, prejudgment interest is allowed from the date of the loss or the accrual of cause of action." *Bosem v. Musa Holdings, Inc.*, 46 So. 3d 42, 46 (Fla. 2010). Florida law is clear that a plaintiff is entitled to prejudgment interest on an unjust enrichment claim. *Montage Grp., Ltd. v. Athle–Tech Computer Sys., Inc.*, 889 So. 2d 180, 199 (Fla. 2d DCA 2004) (holding that it was appropriate to award prejudgment interest where "damages for unjust enrichment can be liquidated" to a certain date). And with respect to tort claims like TracFone's claim for conversion, "where the loss is wholly pecuniary, and may be fixed as of a definite time, interest

-17-

should be allowed as a matter of right, whether the loss is liquidated or unliquidated . . . ." *Bosem*, 46 So. 3d at 46.

"In the absence of a special contract for the rate, the applicable rate of interest is generally stated in Florida Statute Section 55.03." *IberiaBank v. Coconut 41, LLC*, 2013 WL 6061883, *12 (M.D. Fla. Nov. 18, 2013).   The pre-judgment interest is the rate effective at the time of entitlement.[4]   *Id.* (citing *Genser v. Reef Condo. Ass'n, Inc.*, 100 So. 3d 760, 762 (Fla. 4th DCA 2012)).   Currently, that rate is 4.75%.

The computation of prejudgment interest is "a mathematical computation" and "a purely ministerial duty," so no finding of fact is needed, and no discretion is permitted. *SEB*, 476 F.3d at 1320 (citing *Argonaut*, 474 So.2d at 215).   Florida law generally provides the date of loss is the date from which prejudgment begins to accrue.   *Offices Togolais Des Phosphates v. Mulberry Phospates, Inc.*, 62 F. Supp. 2d 1316, 1328 (M.D. Fla. 1999).

Hence, on TracFone's state law claims, it seeks and is entitled to prejudgment interest at the statutory interest rate of 4.75%.   *See* Fla. Stat. § 55.03.   TracFone seeks this interest rate from January 1, 2014, to the present on the full amount of the monetary damages that it seeks.   This amounts to $4,266.72 in prejudgment interest sought by TracFone.

The Court finds that TracFone is entitled to prejudgment interest in the amount of $4,266.72 and enters judgment in TracFone's favor.

### POST JUDGEMENT DISCOVERY PURSUANT TO FLA. R. CIV. P. FORM 1.977

The Court concludes that this Final Judgment will also require Hernandez to complete and return a sworn copy of the Fact Information Sheet set forth in Fla. R. Civ. P. Form 1.977, including all required attachments within 45 days of being served with the judgment.   The Federal Rules of Civil Procedure provide that a judgment creditor "may obtain discovery from

---

[4] The Court notes that Florida's statutory interest rate was increased to 4.78% as of April 1, 2016.   However, for ease of calculation, TracFone sought only the previous interest rate of 4.75%, which was the statutory interest rate when TracFone filed the Motion. (D.E. 22.)

any person—including the judgment debtor—as provided in these rules or by the procedure of the state where the court is located." Fed. R. Civ. P. 69(a)(2). " Under Florida law, 'the court, at the request of the judgment creditor, shall order the judgment debtor or debtors to complete form 1.977, including all required attachments, within 45 days of the order or other such reasonable time as determined by the court.'" *American Home Assur. Co. v. Weaver Aggregate Transport, Inc.*, 298 F.R.D. 692, 693 (M.D. Fla. 2014) (citing Fla. R. Civ. P. 1.560(b)).

Federal courts in Florida routinely order this type of relief. *See, e.g.*, *TracFone Wireless, Inc. v. Holden Property Services, LLC*, 2014 WL 3585711 (S.D. Fla. July, 21, 2014) (entering monetary judgment in TracFone's favor and ordering that the defendants "shall complete and serve upon Plaintiff's counsel Fla. Civ. P. Form 1.977 and its required attachments within forty-five (45) days of being served with this judgment."); *PNC Bank, N.A. v. DBAK Holdings, LLC*, 2013 WL 6231218, *4 (M.D. Fla. Dec. 2, 2013) (directing party against whom judgment was entered "to complete a Florida Rules of Civil Procedure, Form 1.977, Fact Information Sheet, including all required attachments."); *Rodriguez v. Super Shine and Detailing, Inc.*, 2013 WL 4786596, *4 (S.D. Fla. Sept. 6, 2013) ("The Defendants shall complete the Fact Information Sheet, Form 1.977, attached to Plaintiff's Motion . . ."); *see also, e.g., TracFone Wireless, Inc. v. Mohamed*, 2015 WL 6745417, *1 (N.D. Fla. Oct. 6, 2015) (same relief granted).

Because Hernandez has refused to appear in this case and requiring him to complete Fla. R. Civ. P. Form 1.977 will help effectuate this Court's Final Judgment, the Court will require Hernandez to complete the same. As such, the Court orders TracFone to serve Fla. R. Civ. P. Form 1.977 on Hernandez and Hernandez to complete the form and return to TracFone as more specifically set out below.

<u>**RELIEF**</u>

The Court, having considered the Motion (D.E. 22), reviewed the case file, and being otherwise fully advised, and for the reasons stated herein, hereby **ORDERS** and **ADJUDGES** that:

(a)      TracFone's Motion for Default Final Judgment and Permanent Injunction (D.E. 22) is **GRANTED**.  Final judgment is entered in favor of Plaintiff TracFone Wireless, Inc. and against Defendant Juan Hernandez in the amount of $35,275.00, plus prejudgment interest in the amount of $4,266.72, the sum of which—**$39,541.72**—shall bear interest at the legal rate, for which let execution issue forthwith.

(b)      The Court further finds that the conduct of Hernandez was willful and malicious as those terms are defined in 11 U.S.C. § 523(a)(6).

(c)      The Court additionally finds that Hernandez's participation in the Airtime Theft Scheme has caused substantial and irreparable harm to TracFone, and will continue to cause substantial harm to TracFone unless enjoined.

(d)      The Court additionally finds that Hernandez should be permanently enjoined from engaging in the unlawful practices described in the Complaint and known therein as the Airtime Theft Scheme.

(e)      Therefore, Hernandez, and each and all of Hernandez's respective officers, directors, successors, assigns, parents, subsidiaries, affiliates, related companies, predecessors-in-interest, principals, agents, employees, attorneys, accountants, investigators, consultants, and all other persons or entities acting or purporting to act for him or on his behalf, including, but not limited to, any corporation, partnership, proprietorship, or entity of any type that is in any way affiliated or associated with Hernandez or Hernandez's representatives, agents, assigns, parent entities, employees, independent contractors, accountants, attorneys associates, servants,

affiliated entities, and any and all persons and entities in active concert and participation with Hernandez, shall be and hereby are **PERMANENTLY ENJOINED** from:

1. selling TracFone Service offered under any of TracFone's brands, including the spiracle logo, Clearway Wireless, Net10, Straight Talk, Simple Mobile, SafeLink, Page Plus, TelCel America, Total Wireless, and TracFone (the "TracFone Family Brands");

2. attempting to sell cellular service that Hernandez knows or reasonably should know is offered under any of the TracFone Family Brands;

3. facilitating or in any way assisting other persons or entities who Hernandez knows or reasonably should know is engaged in a scheme to fraudulently acquire and sell TracFone service offered under any of the TracFone Family Brands for their own profits;

4. knowingly using the TracFone Marks, a current listing of which is included in the Complaint (D.E. 1), or any other Trademark that Defendants know or reasonably should know are owned or used by any of the TracFone Family Brands or that is likely to cause confusion with TracFone's Marks, without TracFone's prior written authorization.

(f) Hernandez shall complete and return a sworn copy of the Fact Information Sheet set forth in Fla. R. Civ. P. Form 1.977, including all required attachments within 45 days of being served with this Final Judgment, pursuant to Fla. R. Civ. P. 1.560.

(g) The Court retains jurisdiction over this matter and the parties to this action in order to enforce any violation of the terms of this Order and Permanent Injunction.

(h) Any violation of the terms of this Permanent Injunction may be punishable by a finding of contempt of court.

(i) The prevailing party in any proceeding to enforce compliance with the terms of this Permanent Injunction shall be entitled to an award of its attorneys' fees and costs incurred thereby.

(j)     TracFone is directed to serve a copy of this Final Judgment on Hernandez along with the Fact Information Sheet provided for in Fla. R. Civ. P. Form 1.977.  TracFone may serve an uncertified copy of this Final Judgment on Hernandez via FedEx and email and file a "FedEx delivery confirmation" or other similar proof of service with the Court.

(k)     The Court finds that there is no just reason for delay of the entry of default final judgment against and Hernandez, and, therefore, pursuant to Fed. R. Civ. P. 54(b), directs the Clerk to enter the judgment as set forth herein.

(l)     This case is **CLOSED** and all pending motions are **DENIED as MOOT**.

DONE AND ORDERED in Chambers at Miami, Florida, this 20 day of July, 2016.

JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

Copies provided to:
Magistrate Judge Goodman
All Counsel of Record

-22-